IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MANIFATTURE 7 BELL S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-1517-SLR |
| | ) | |
| HAPPY TRAILS LLC, and | ) | |
| THE CHILDREN'S TRUST U/A, | ) | |
| ROY ROGERS DALE EVANS | ) | |
| TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

Jeffrey L. Moyer, Esquire, and Katharine Lester Mowery, Esquire, of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Alan Tenenbaum, Esquire, and Nels T. Lippert, Esquire, of Tarter Krinsky & Drogin LLP.

Kenneth Laurence Dorsney, Esquire, of Morris James, LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Christie Bahna, Esquire, and John M. Gatti, Esquire, of Manatt, Phelps & Phillips, LLP, Harvey Freedenberg, Esquire, and Carol Steinour Young, Esquire, of McNees, Wallace & Nurrick LLC.

## MEMORANDUM OPINION

Dated: March 29, 2016
Wilmington, Delaware

**ROBINSON, District Judge.**

## I. INTRODUCTION

Plaintiff Manifatture 7 Bell S.P.A. ("plaintiff") filed an action on December 23, 2014 against defendant Happy Trails, LLC ("defendant Happy Trails") and defendant The Children's Trust U/A Roy Rogers Dale Evans Rogers Trust ("defendant Trust") (collectively, "defendants"), seeking a declaratory judgment.  (D.I. 1)  Plaintiff described the action as "an action for a declaratory judgment that [plaintiff] does not infringe on any valid claim or right of [d]efendants in the name Roy Roger's and for a declaratory judgment that [p]laintiff's U.S. Trademark Registration Nos. 3,636,761 and 3,476,723 are valid and subsisting, and further that Application No. 85/931,769 be registered."[1] (*Id.* at ¶ 1)  On May 8, 2015, defendants filed an answer to plaintiff's complaint and counterclaimed, alleging "unauthorized use of the [Roy Roger's] name by [plaintiff]" and stating that "[plaintiff] has used and continues to use the [Roy Roger's] name on its products, without authorization and in violation of [defendants'] right of publicity."  (D.I. 11 at 12)  Presently before the court is plaintiff's motion to dismiss defendants' counterclaim.  (D.I. 21)  This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

## II. BACKGROUND

Plaintiff is a denim manufacturer incorporated and based in Italy.  (D.I. 1 at ¶ 5) Defendant Happy Trails is a Delaware limited liability company with its principal place of business located in Lititz, Pennsylvania.  (D.I. 11 at 2)  Defendant Trust is a trust

---

[1] The parties refer to the Roy Roger's name and mark differently.  For purposes of consistency, the court will use "Roy Roger's" where applicable.

established under the laws of Missouri, with its principal place of business located in Lampe, Missouri.  (D.I. 1 at ¶ 7)

Roy Rogers ("Rogers") was an American celebrity known for his music and appearances in film and television.  During his lifetime, Rogers allowed his name to appear on goods, memorabilia and restaurant franchises, and acted as a spokesperson for various well-known brands.  (D.I. 11 at 13-14)  In 1998, Rogers passed away.  (*Id.* at 15)  However, his name and identity remain popular and his image is widely recognized. (*Id.*)  Upon Rogers' death, defendant Trust acquired all of Rogers' rights, including "all right[s], title and interest in and to the intellectual property rights associated with Rogers' name and likeness," as well as "the power to enforce such intellectual property rights." (*Id.*)

In 2012, defendant Happy Trails was created as a limited liability company, and defendant Trust "became a member of and assigned all of its rights to Happy Trails." (*Id.*)  Defendant Trust "granted Happy Trails an exclusive license to exploit all the intellectual property rights associated with Rogers," and also entrusted defendant Happy Trails "with the power to enforce such intellectual property rights."[2]  (*Id.*)

Plaintiff states that it was founded in Florence, Italy in 1949 as "the first Italian blue jeans manufacturer."  (D.I. 1 at ¶ 13)  Plaintiff also states that, since 1952, it produced denim "under the name of Roy Roger's."  (*Id.*)  Plaintiff's use of Rogers' name stems from Rogers' image as a symbol of the American West and resulting popularity in

---

[2] On April 4, 2013, Roy Rogers' son, Roy Rogers, Jr., registered as his father's successor-in-interest with the California Secretary of State.  (*Id.* at 15)

2

Italy.[3]  (*Id.* at ¶¶ 14-16)  Plaintiff states that in 2008, it "commenced sale of its products

in the United States" and "such use continues to the present."  (*Id.* at ¶ 17)  Also in

2008, plaintiff was granted the '723 Registration for a stylized design mark featuring the

text "Roy Roger's."[4]  (*Id.* at ¶ 20)

On June 9, 2009, plaintiff was granted the '761 Registration for a stylized mark

featuring the text "Roy Roger's."[5]  (*Id.* at ¶ 18)  On October 14, 2009, counsel for

defendant Happy Trails' predecessor to Rogers' intellectual property rights, Roy Rogers

Family Entertainment Corporation ("RRFEC"), sent plaintiff a cease and desist letter

stating that "[plaintiff's] use and registration for Roy Roger's was causing a likelihood of

confusion and was damaging RRFEC's rights in the name [Roy Roger's]," and

demanding that "[plaintiff] cease use of Roy Roger's in the United States" and "cancel

[the] '761 Registration and the '723 Registration."  (*Id.* at ¶ 25)  Plaintiff states that,

since it "did not believe its use of Roy Roger's violated any rights alleged by RRFEC, [it]

did not respond to the October 14, 2009 letter and did not receive any further

communications from RRFEC."  (*Id.* at ¶ 26)

---

[3] In its complaint, plaintiff states, "Plaintiff 7 Bell's Roy Roger's jeans were introduced in Post-World War II Italy, a time when many Italians viewed Americans as the liberators of their country.  [Plaintiff] was the first Italian jeans manufacturer to use denim imported from the United States.  Because of the connection with the United States, [plaintiff] decided on the Roy Roger's name, a legendary figure that traveled the Great Plains of the American West in the second half of the 19th [C]entury…In the 60s and 70s, Roy Roger's jeans became a popular item in Italy, introducing features that today are iconic and found in every pair of Roy Roger's jeans."  (D.I. 1 at ¶¶ 14-16)

[4] Plaintiff states that "[t]he '723 Registration is valid and covers ready made clothing, namely, outfits, namely, jackets, trousers…in International Class 25.  In addition, the '723 Registration is incontestable."  (*Id.* at ¶ 21) (internal quotation marks omitted)

[5] Plaintiff states that "[t]he '761 Registration is valid and covers trousers of leather or imitation of leather in International Class 25."  (*Id.* at ¶ 19) (internal quotation marks omitted)

Plaintiff claims to own the pending '769 Application filed on May 14, 2013, for the mark "Roy Roger's" in "plain text" for an enumerated list of goods and services.[6] (*Id.* at ¶ 22) Defendants state that, on June 11, 2013, [defendants] filed an intent-to-use application "for registration of the mark [Roy Roger's]" for use with apparel items in International Class 25 (D.I. 11 at 20), and that the USPTO "refused registration of [defendants'] Application because of a likelihood of confusion with [plaintiff's] [Roy Roger's] marks." (*Id.* at 21) On June 12, 2013, counsel representing defendants sent plaintiff a second cease and desist letter that alleged "trademark infringement of [d]efendants' intellectual property rights associated with ... Roy Rogers as well as a violation of a right of publicity." (D.I. 1 at ¶ 27)

On September 17, 2014, defendants instituted an opposition to the '769 Application with the Trademark Trial and Appeal Board at the USPTO, which is currently pending.[7] (*Id.* at ¶ 30) On November 19, 2014, defendants instituted a cancellation against the '761 Registration and the '723 Registration, which is also pending.[8] (*Id.* at ¶ 31) In its complaint seeking a declaratory judgment, plaintiff states that, "[d]espite the threats made by [d]efendants in the 2009 and 2012 cease and desist letters, [d]efendants have not filed any civil actions against [plaintiff]," and that plaintiff "has relied on [d]efendants' inaction to its detriment." (*Id.* at ¶ 32)

---

[6] The list of goods and services includes items listed as in "International Class 18," "International Class 25," and "International Class 25." (*Id.* at ¶ 22) "The USPTO permitted the '769 Application to publish on May 20, 2014." (D.I. 11 at 20)

[7] Defendants instituted "Opposition No. 91218423 against the '769 Application...[which is] based on: (1) false association with a deceased person under Section 2(a) of the Lanham Act, 15 U.S.C. 1052(a); and (2) fraud in the procurement of the '769 application." (D.I. 1 at ¶ 31).

[8] The cancellation was based on the same allegations used to support defendants' opposition to the '769 Application. *See supra* note 6.

4

On May 8, 2015, defendants filed an answer to plaintiff's complaint and a counterclaim. (D.I. 11) In their counterclaim, defendants allege, among other things, that plaintiff's "use of the [Roy Roger's] name violates his right of publicity, in violation of California Civil Code § 3344.1." (*Id.* at ¶ 54) On May 17, 2015, plaintiff filed a motion to dismiss defendants' first counterclaim for relief for violation of the right of publicity pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 21) Plaintiff argues that defendants' counterclaim is "barred by the two-year statute of limitations applicable to California's statutory right of publicity." (D.I. 22 at 1)

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556

U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

Whether defendants' counterclaim survives plaintiff's 12(b)(6) motion turns on whether the counterclaim falls within the scope of the applicable statute of limitations. California Civil Code § 3344.1, under which defendants have asserted the instant counterclaim, codifies the available cause of action for a violation of the right of publicity under California law. *See* Cal. Civ. Code § 3344.1. Right of publicity claims brought under this statute are subject to a two-year statute of limitations. *See Christoff v. Nestle*

6

*USA, Inc.*, 213 P.3d 132, 134 (Cal. 2009) (acknowledging two-year statute of limitations for statutory right of publicity).

In discussing the limitations period for right of publicity claims, the court in *Christoff* addressed right of publicity claims with respect to the single publication rule. *See id.* at 137.[9] Articulated in Section 3425.3 of the California Civil Code, the single publication rule states that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." Cal. Civ. Code § 34.25.3. Under this rule, the limitations period in a right of publicity case begins immediately when the single publication is initially distributed to the public, and the period resets only if the publication is republished. *See Christoff*, 213 P.3d at 134. Moreover, the rule applies only if the product is "distributed widely to the public." *Id.* at 141 (distinguishing instances in which material is distributed publicly from circumstances in which product labels are published in "an inherently secretive manner") (quotations in original) (citing *Hebrew Acad. of San Francisco v. Goldman*, 173 P.3d 1004 (Cal. 2007)).

In *Christoff*, the court acknowledged that, with respect to the single publication rule, the definition of "republication" is unclear. While the court discussed the scope of the single publication rule, it declined to determine whether the specific publication at issue constituted a republication based on the insufficient factual record before it. *See id.* at 137, 141 (stating that the particular factual scenario before the court presented

---

[9] "We agree that, in general, the single-publication rule as codified in [S]ection 3425.3 applies to causes of action for unauthorized commercial use of likeness." *Christoff*, 213 P.3d at 137.

issue of first impression in determining whether rule applied).[10] Further, if a court does not have "evidence of [a] [d]efendant's [decision-making] process" in this regard, a court may choose not to deny the claim. *See Hall v. South Beach Skin Care, Inc.*, No. 13-8905, 2014 WL 1330311, at*4 (C.D. Cal. Apr. 2, 2014) (denying defendant's motion to dismiss right of publicity claim); *see also Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1009 (N.D. Cal. 2012) (concluding that "[t]he question of [d]efendant's [decision-making] process cannot be resolved at this stage of the litigation, without the benefit of evidence.").

In the instant case, the parties dispute whether plaintiff's use of the Roy Roger's mark constitutes a single publication. Plaintiff avers that it has "continuously offered for sale its clothing bearing the Roy Roger's mark since 2008 to the present in the United States," therefore, the counterclaim is barred under the single publication rule. (D.I. 22 at 10) Conversely, defendants argue that the single publication rule does not apply because, "[u]nlike the defendant company in *Christoff*, which had stopped printing the infringing image on its product labels before plaintiff brought his suit, [plaintiff at bar] admittedly continues to sell its infringing products." (D.I. 26 at 8)

On the record before it, the court cannot decide the applicability of the single publication rule. Plaintiff's evidence demonstrating that its jeans were manufactured for the American market as early as 2008 is extrinsic[11] and does not establish that plaintiff

---

[10] Furthermore, in *Christoff*, Justice Werdegar issued a concurring opinion in which he suggested that, when deciding whether the single publication rule applies to a right of publicity claim, a court must consider whether the defendant "made at any time a conscious, deliberate choice to continue, renew or expand the use of labels bearing plaintiff's misappropriated image." *Id.* at 147.

[11] Plaintiff provided, among other things, invoices indicating that orders for its relevant denim products had been placed in 2008. (D.I. 22, ex. A) If the court considers such

8

sold its products to a sufficiently large audience to trigger application of the single publication rule. Determining whether this rule applies would require factual determinations as to whether the sales involved use of the Roy Roger's mark, the amount of infringing products sold, and the manner in which any infringing products were sold.

## V. CONCLUSION

For the reasons stated above, plaintiff's motion to dismiss (D.I. 21) is denied. An appropriate order shall issue.

---

evidence with respect to a motion to dismiss, the court must convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). For the reasons discussed, the court declines to convert the present motion into one for summary judgment.